MATTER OF QUINTANILLA-QUINTANILLA

In Deportation Proceedings

A-5096094

*Decided by Board November 29, 1965*

The return to the United States on December 22, 1963, of respondent, a lawful permanent resident of this country since 1927, following a week spent in Mexico visiting relatives and making a pilgrimage, did not constitute an entry [*Rosenberg v. Fleuti*, 374 U.S. 449] upon which to predicate a ground of deportation since respondent, in making a short visit to Mexico as he had been accustomed to do annually for many years without any interruption of his legal residence; in retaining in the United States his assets, his business—a large farming operation, and his family, consisting of a U.S. citizen wife and 7 citizen children of whom 5 are dependents; and in presenting upon return his Alien Registration Card, an immigration document required to be carried by every alien in the United States, has established his departure in a meaningful manner was not intended or expected.

CHARGE:

Order: Act of 1952 Section 241(a)(4) [8 U.S.C. 1251(a)(4)]—Convicted of crime involving moral turpitude within five years after entry and sentenced to a year or more.

This is an appeal from the order of the special inquiry officer requiring respondent's deportation upon the ground stated in the caption. The appeal will be sustained.

Respondent, a 58-year-old Mexican national, has, except for short visits to Mexico, been in the United States since he was legally admitted for permanent residence in 1927. His last return to the United States (after a visit of a week to Mexico) was on December 22, 1963. Some months later respondent killed a man (allegedly in self-defense). He was found guilty of murder on January 27, 1965 and received a sentence of two years which he is serving.

Respondent's conviction of a crime involving moral turpitude and his confinement under a sentence to confinement for a year or more are established. If his return in 1963 constituted an "entry," respondent is clearly deportable as charged.

Prior to *Rosenberg* v. *Fleuti*, 374 U.S. 449 (1963), an "entry" for immigration purposes existed when there was a voluntary coming of an alien into the United States whether it was the first coming or a return. *Fleuti* held that a lawfully resident alien who returns after a brief absence not intended to disrupt his resident alien status, and whose purpose in leaving and returning is lawful, has not made an "entry" subjecting him to the qualitative restrictions of the immigration law (*Rosenberg* v. *Fleuti*, 374 U.S. 449 (1963); *Matter of Kolk*; Int. Dec. No. 1443; *Matter of Caudillo-Villalobos*, Int. Dec. No. 1423).

After considering *Fleuti* and several Board decisions interpreting *Fleuti* (*Matter of Abi-Raohid*, Int. Dec. No. 1344; *Matter of Karl*, Int. Dec. No. 1326; and *Matter of Caudillo-Villalobos*, *supra*) the special inquiry officer decided that the instant case does not come within the *Fleuti* rule. The special inquiry officer ruled that respondent had made an "entry" upon his return in 1963 and he was therefore deportable as one who had committed a crime within five years of the "entry." The special inquiry officer held that respondent was not within the *Fleuti* rule because Fleuti had made a casual visit of several hours to Mexico whereas the respondent had planned his trip for some time, had purchased an automobile for the trip, had presented his Alien Registration Card, and had remained in Mexico for a week.[1]

These are the pertinent facts. Respondent, a United States resident for 38 years, is married to a United States citizen and has seven United States citizen children of whom five are dependents. He conducts a large farming operation. From the time of respondent's entry until 1954 when his father died, he made yearly trips to Mexico to his native town about an hour from the border. His brothers, sisters and stepmother still live in his native town. Prior to his last entry, he had been in Mexico in 1956. In July 1963 while ill, he made a vow that if he recovered, he would go on a pilgrimage to Mexico. Upon recovery, he bought a car to make the pilgrimage and to visit his relatives in Mexico. At the border he applied to Mexican officials for a special permit entitling him to take his car to Mexico. In Mexico, he gave his Alien Registration Card to the Mexican officials who held it as security that he would bring his car back out of Mexico. He presented his Alien Registration Card to United States officials upon his return. He spent about a week in Mexico in visiting and in making his pilgrimage.

*Matter of Caudillo-Villalobos*, *supra*, is distinguishable from the instant case because it involved an alien whose departure was under legal process whereas the respondent's departure was not. The find-

ing in *Abi-Rachid* that an "entry" was made is based on three factors, two of which on reconsideration, are no longer deemed of importance; therefore, we do not consider the case of significant precedent value. The three factors are the length of absence, the presentation of an Alien Registration Receipt and Border Crossing Card (I-151) upon return, and the fact that the act on which the ground of deportability was based was committed after the return. The last two factors, neither of which was shown to relate to the intent with which the departure and return were made, seem, in and of themselves, of little significance in determining whether an alien *intended* to make a departure interruptive of his legal residence. As to the presentation of an Alien Registration Card, it is merely the showing of a card which every alien is required by law to carry with him at all times — moreover it bears a notice that it can be used for a return to the United States from foreign (*Matter of Yoo*, Int. Dec. No. 1305); as to the commission of an act after return it may or may not have a bearing in determining the intent with which an alien departed from the United States. *Matter of Karl, supra,* presents a closer analogy. Karl was absent on a vacation trip in Mexico for ten days; he returned illegally on a false claim to United States citizenship. We held an "entry" was made upon return; we took into consideration the length of stay. The *Karl* case was decided on March 9, 1964 before either the decision in *Wadman v. Immigration and Naturalization Service,* 329 F.2d 812 (9th Cir., March 26, 1964), or *Zimmerman v. Lehmann,* 339 F.2d 943 (7th Cir., January 7, 1965), cases dealing with aliens who had taken brief vacations in contiguous territory. The administrative decision must therefore be reviewed in light of these judicial decisions.

*Wadman, supra* (a case in which the Board is seeking clarification concerning an aspect not pertinent here, *Matter of Wong,* Int. Dec. No. 1444), involved an alien who had been administratively found to have broken the continuity of his physical presence in the United States by spending a five-day vacation trip in Mexico. The court found that the length of Wadman's stay in Mexico did not ipso facto take his case out of *Fleuti*; the court returned the case for further scrutiny to determine "whether the interruption [to residence], viewed in balance with its consequences, can be said to have been a significant one under the guides laid down in Fleuti" 329 F.2d (at 816).

*Zimmerman, supra,* involved an alien who had been lawfully admitted for permanent residence in 1913 and who had in July 1952 visited Canada for a five or six-day vacation. In 1953 he visited Canada for less than 24 hours and upon trying to return

434

was considered as one excludable at his return in July 1952 because he had been convicted of a crime prior to that entry; he was paroled into the United States and later given an exclusion hearing at which he was ordered excluded on the same theory. He sought judicial review; the court held that respondent had not made an "entry" upon his return in 1952, and that his status as a resident alien was therefore not impaired. The court relied upon *Fleuti* and *Wadman*, and pointed to the long legal residence enjoyed by the alien, the fact that he was married to an American citizen, the fact that he had three minor dependent citizen children, and the fact that he had a residence and business in the United States. The court stated, "From the fact that he took his family on a harmless, innocent vacation trip to Canada, it would border on the absurd to ascribe to him an intention of impairing his status as a permanent resident of this country" (339 F.2d at 949).

We thus have judicial authority for the view that a vacation trip of five days outside the United States can fall within the *Fleuti* rule. The question then apart from the length of the stay in Mexico, is therefore whether the respondent intended to depart in a manner meaningfully interruptive of the 38 years of legal residence he had in the United States. Based on the philosophy of the *Fleuti* rule, we hold he has not. In visiting Mexico for a short visit as he had been accustomed to do for many years without any interruption of his legal residence, in retaining his business, assets, and family in the United States, and in entering with an immigration document which was no more than the document required to be carried by every alien in the United States we think respondent has established his departure in a meaningful manner was not intended or expected. Proceedings will be terminated.

ORDER: It is ordered that the respondent's appeal be and the same is hereby sustained and that the proceedings be and are hereby terminated.