**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 05-1526**

FRANCIS D. COOPER,

Petitioner,

versus

ALBERTO R. GONZALES, Attorney General,

Respondent.

On Petition for Review of an Order of the Board of Immigration
Appeals. (A46830567)

Argued: November 28, 2006          Decided: February 7, 2007

Before NIEMEYER and MICHAEL, Circuit Judges, and Joseph R. GOODWIN,
United States District Judge for the Southern District of West
Virginia, sitting by designation.

Petition denied by unpublished per curiam opinion.

**ARGUED:** Randy Olen, Providence, Rhode Island, for Petitioner.
Scott Anton Chutka, UNITED STATES DEPARTMENT OF JUSTICE, Office of
Justice Programs, Washington, D.C, for Respondent. **ON BRIEF:** Peter
D. Keisler, Assistant Attorney General, Civil Division, Cindy S.
Ferrier, Senior Litigation Counsel, Office of Immigration
Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.,
for Respondent.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Francis D. Cooper, a Liberian, came to the United States when he was fourteen years old after being adopted by two U.S. citizens. Less than a year later, his adoptive parents sent Cooper back to Liberia, where he remained for two and one-half years. When Cooper attempted to reenter the United States, he was detained and charged as an inadmissible alien under 8 U.S.C. §§ 1182(a)(6)(C), (7)(A) because he lied to immigration officials and did not have a visa. The charges were sustained by the immigration judge (IJ) and the Board of Immigration Appeals (Board), and Cooper petitions for review. We deny the petition, concluding that Cooper was correctly classified as an alien seeking admission, see 8 U.S.C. § 1101(a)(13)(C)(ii), and that the evidence supports both grounds of inadmissibility.

I.

Cooper is a 21-year-old native and citizen of Liberia. In 1998 Cooper and his sister, Deena, were adopted by Christian and Cherine Smith, both U.S. citizens. Cooper was admitted to the United States as a legal permanent resident (LPR) on November 25, 1998. According to Cooper, his and his sister's relationship with the Smiths deteriorated shortly after their arrival. Cooper contends that the Smiths became angry after his sister wrote an essay at school criticizing the Smiths' treatment of her and

2

Cooper. Certain documents in the administrative record, however, indicate that the Smiths came to believe rather quickly that the Cooper children's biological mother never intended to relinquish her parental rights. In any event, in June 1999 the Smiths purchased two airline tickets to Liberia for Cooper and his sister. Cooper believed that he was going to Liberia for summer vacation and that he would return to the United States for the start of the fall semester. Cooper departed without his green card, and the Smiths told him the card was still in the process of being issued. The government states that a green card was actually issued to Cooper while he was in this country. The Smiths apparently retained possession of the card.

In August 1999 Cooper called the Smiths to arrange his return trip to the United States. The Smiths said that he could not return until the (former) INS finished processing his green card. Cooper called five more times over the next few months. Each time, the Smiths told him the same story. Finally, in March 2000 the Smiths told Cooper that the U.S. authorities would not issue a green card. Cooper did not speak with the Smiths again.

Cooper remained in Liberia for another 18 months. He lived with his maternal aunt and completed his high school education. In November 2001 Cooper obtained a transportation letter from the United States Consulate in Liberia. (A transportation letter functions as a temporary replacement for a

green card and permits a legal permanent resident who has lost his card to travel to the United States.)  Cooper then purchased a ticket to the United States.

Cooper arrived in Baltimore, Maryland, on December 19, 2001, where he was detained and questioned by immigration officials.  After being placed under oath, Cooper maintained that he lost his green card while dancing at a club in Monrovia, Liberia.  He also told the officials that he had last been in the United States on August 15, 2001.  The INS issued Cooper a Notice to Appear (NTA) and initiated removal proceedings.  The NTA alleged that Cooper was an inadmissible alien on the grounds that he (1) willfully misrepresented a material fact in order to gain admission, see 8 U.S.C. § 1182(a)(6)(C)(i), and (2) did not possess a valid unexpired immigrant visa, see § 1182(a)(7)(A)(i)(I).

After a hearing the IJ sustained both charges in the NTA and ordered Cooper removed to Liberia.  The Board adopted the IJ's decision and added limited discussion of its own.  We therefore review both decisions.  See Kataria v. INS, 232 F.3d 1107, 1112 (9th Cir. 2000).

## II.

We may overturn a final order of removal only if it is "manifestly contrary to law," 8 U.S.C. § 1252(b)(4)(C), or is not supported by substantial evidence, Gandziami-Mickhou v. Gonzales,

4

445 F.3d 351, 354 (4th Cir. 2006). With this standard of review in mind, we consider the agency determinations that (1) Cooper was an alien seeking admission to the United States, and (2) that he was inadmissible under both charges in the NTA.

## A.

The IJ first determined that Cooper was seeking admission to the United States when he arrived in Baltimore. As a general rule, legal permanent residents are presumptively entitled to enter the United States without "seeking an admission" under 8 U.S.C. §§ 1181, 1182. See 8 U.S.C. § 1101(a)(13)(C). There are six exceptions to this rule, however, and a returning LPR must seek admission if he falls within any one of them. Id. § 1101(a)(13)(C)(i)-(vi); see also In re Collado-Munoz, 21 I. & N. Dec. 1061, 1064 (BIA 1998); Tineo v. Ashcroft, 350 F.3d 382, 386 (3d Cir. 2003). One of the exceptions is when the LPR has "been absent from the United States for a continuous period in excess of 180 days." Id. § 1101(a)(13)(C)(ii). There is no dispute that Cooper was absent from this country continuously for more than 180 days because he concedes that he remained in Liberia from June 1999 to December 2001, almost two and a half years. Accordingly, the IJ did not err in concluding that Cooper was seeking admission to the United States.

B.

As an alien seeking admission, Cooper could be excluded on any of the grounds listed in 8 U.S.C. § 1182 ("Inadmissible Aliens"). The IJ determined, and the Board agreed, that Cooper was inadmissible for two reasons: he lacked a valid immigrant visa, § 1182(a)(7)(A)(i)(I), and he made material misrepresentations to the immigration officials, § 1182(a)(6)(C)(i).

1.

An alien is inadmissible if at the time of application for admission he does not possess "a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other document required by this Act." 8 U.S.C. § 1182(a)(7)(A)(i)(I). Cooper does not contest the government's assertion that he arrived in Baltimore without a visa. Nor does Cooper dispute that his Form I-551 (green card) expired in June 2001, one year after he left the United States. See 8 C.F.R. § 211.3 (A Form I-551 "shall be regarded as unexpired . . . before the first anniversary of the date on which [the alien] departed from the United States."). Cooper did not renew his green card while he was in Liberia, and he did not acquire any other visa before arriving in the United States. The undisputed facts thus support the IJ's (and the Board's) conclusion that Cooper is inadmissible under § 1182(a)(7)(A)(i)(I).

6

2.

The IJ also concluded, and the Board again agreed, that Cooper was inadmissible under 8 U.S.C. § 1182(a)(6)(C)(i). This provision states, "Any alien who, by fraud or willfully misrepresenting a material fact, seeks to procure . . . a visa, other documentation, or admission into the United States . . . is inadmissible." 8 U.S.C. § 1182(a)(6)(C)(i). Cooper made at least two misrepresentations in order to gain admission to the United States. During his interview with the immigration officials in Baltimore, Cooper stated (1) that he lost his green card while dancing at a club in Monrovia, Liberia, and (2) that he was last in the United States on August 15, 2001. Both statements were misrepresentations of fact. The only question is whether the misrepresentations were willful and material.

A misrepresentation is willful if the alien voluntarily spoke with the knowledge that the statement was false. See Forbes v. INS, 48 F.3d 439, 442 (9th Cir. 1995). Cooper admits that he acted on his own volition, knowing that both statements were false. The falsehoods were also material. The test for materiality is whether "(1) the alien is [inadmissible] under the true facts, or (2) the misrepresentation tends to shut off a line of inquiry which is relevant to the alien's eligibility." Matter of Boromand, 17 I. & N. Dec. 450, 452 (BIA 1980). Cooper argues that the misrepresentations were not material because he was entitled to

7

enter this country as a legal permanent resident. This argument fails. As we have already determined, Cooper was inadmissible under "the true facts" because his green card had expired. See 8 U.S.C. § 1182(a)(7)(A)(i)(I). Accordingly, the misrepresentations were both material and willful, and the IJ's finding of inadmissibility under § 1182(a)(6)(C)(i) is supported by substantial evidence.

## III.

In sum, Cooper was an alien seeking admission to the United States because he was absent from the country for more than 180 days. There is sufficient evidence to support the determination of the IJ and the Board that Cooper was inadmissible on two alternative grounds, that he did not possess a valid immigrant visa and that he made willful and material misrepresentations in order to obtain admission.[*]

PETITION DENIED

---

[*]It is not necessary for us to reach Cooper's argument that the IJ and the Board erred in determining that he had abandoned his LPR status. Even if Cooper retained his LPR status, he was still absent from the country for more than 180 days and therefore properly classified as an alien seeking admission. Cooper was, of course, inadmissible for the reasons stated in part II.B, supra.