# In re Phat Dinh TRUONG, Respondent

## File A25 160 691 - San Francisco

*Decided October 20, 1999*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) An alien whose June 8, 1987, conviction for second degree robbery was not, at the time of his conviction, included in the aggravated felony definition was not deportable, even after that offense was included in the aggravated felony definition as a crime of violence under the Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978, due to its provisions regarding effective dates; however, the alien became deportable upon enactment of section 321(b) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546, 3009-628 (enacted Sept. 30, 1996) ("IIRIRA"), because that section established an aggravated felony definition that is to be applied without temporal limitations, regardless of the date of conviction.

(2) The term "actions taken" in section 321(c) of the IIRIRA, 110 Stat. at 3009-628, which limits the applicability of the aggravated felony definition of section 321(b), includes consideration of a case by the Board of Immigration Appeals; therefore that section's aggravated felony definition is applicable to cases decided by the Board on or after the IIRIRA's September 30, 1996, enactment date.

(3) The Attorney General's decision in *Matter of Soriano*, 21 I&N Dec. 516 (BIA 1996; A.G. 1997), remains binding on the Board, notwithstanding decisions in some courts of appeals that have rejected that decision.

Marc Van Der Hout, Esquire, San Francisco, California, for respondent

Stewart Deutsch, Appellate Counsel, for the Immigration and Naturalization Service

Before:   Board En Banc:   DUNNE, Vice Chairman; SCIALABBA, Vice Chairman; VACCA, HEILMAN, HOLMES, HURWITZ, FILPPU, COLE, MATHON, JONES, GRANT, and MOSCATO, Board Members. Concurring and Dissenting Opinion: SCHMIDT, Chairman; joined by ROSENBERG and GUENDELS-BERGER, Board Members. Dissenting Opinion: VILLAGELIU, Board Member.

MATHON, Board Member:

   This is a timely appeal from an Immigration Judge's April 1, 1997, decision finding the respondent deportable as charged and statutorily ineli-

gible for relief from deportation under section 212(c) of the Immigration and Nationality Act, 8 U.S.C. § 1182(c) (1994). Oral argument was heard before a panel of the Board on April 22, 1998. The appeal will be dismissed.

## I. FACTUAL BACKGROUND

The respondent, a 45-year-old native and citizen of Vietnam, was admitted to the United States in 1981 as a refugee. He later adjusted his status to that of a lawful permanent resident, effective as of March 19, 1981. On June 8, 1987, he was convicted in Alameda County, California, of second degree robbery, for a crime committed on or about August 6, 1985. He was sentenced to 6 years' confinement for that offense.

In 1993, the respondent traveled to China and stayed 4 months visiting family and exploring business opportunities. Upon his return, he was placed in exclusion proceedings. Counsel for the respondent filed a motion to terminate, arguing that exclusion proceedings were improper under *Rosenberg v. Fleuti*, 374 U.S. 449 (1963), because the respondent's departure from the United States was brief, casual, and innocent. The Immigration Judge terminated the exclusion proceedings on the basis of *Fleuti* on March 17, 1995. An Order to Show Cause and Notice of Hearing (Form I-221) was issued against the respondent on August 3, 1995, charging him with deportability under section 241(a)(2)(A)(i) of the Act, 8 U.S.C. § 1251(a)(2)(A)(i) (1994), for having committed a crime involving moral turpitude within 5 years of entry with a sentence to confinement therefor of 1 year or longer. The deportation proceedings were continued several times at the request of the respondent, over the objections of the Immigration and Naturalization Service.

At a deportation hearing held on December 14, 1995, the respondent denied deportability, arguing that the Service had not proved, by the requisite clear, unequivocal, and convincing evidence, that the respondent's crime occurred within 5 years of entry. The Immigration Judge rejected these arguments and found the respondent deportable as charged.

The respondent also requested a waiver under section 212(c) of the Act. The proceedings were continued so that the respondent could apply for that relief. At an August 29, 1996, hearing, testimony was heard on the section 212(c) application, but was not completed. The hearing was continued at the end of that day until December 18, 1996.

On December 18, 1996, additional testimony was taken on the application for section 212(c) relief. There also was discussion as to the respondent's continued eligibility for a waiver following changes made in the law by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 ("AEDPA"), and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-

208, 110 Stat. 3009-546 ("IIRIRA"). The hearing was continued again, apparently because the interpreter had to leave. The next day, the Service lodged an aggravated felony charge against the respondent under section 241(a)(2)(A)(iii) of the Act. The respondent also denied deportability under that ground.

Following completion of the hearing on April 1, 1997, the Immigration Judge, with little discussion, found the respondent deportable under both grounds charged. With respect to the aggravated felony charge, the Immigration Judge found that deportability could be sustained "in light of" section 101(a)(43) of the Act, 8 U.S.C. § 1101(a)(43) (1994 & Supp. II 1996), as amended by the IIRIRA. He noted that the amended definition of an aggravated felony, which is set forth in that section, states that the definition applies whether the underlying conviction was entered before, on, or after the date of enactment of the amended definition. He further found that the respondent was ineligible for section 212(c) relief in light of the IIRIRA, stating that "there is no longer any section 212(c) relief."

In his lengthy brief on appeal, the respondent raises a number of issues. We shall address each of these issues in turn.

## II. THE PROPRIETY OF EXCLUSION PROCEEDINGS

The respondent argues that the Service improperly placed him in exclusion proceedings in 1993, upon his return from China. He contends that but for this error by the Service, he would have had his section 212(c) hearing long before passage of the AEDPA and the IIRIRA. The respondent asserts that due process now requires that he be placed in the same position that he would otherwise have been in, that is, eligible to apply for section 212(c) relief. The Service characterizes this assertion as a "frivolous estoppel argument."

The respondent is, in fact, essentially making an estoppel argument. While the Supreme Court has not yet decided definitively whether estoppel may ever lie against the Government, it has noted that it has reversed every lower court finding of estoppel against the Government that has come before it. *See Office of Personnel Management v. Richmond,* 496 U.S. 414 (1990); *see also INS v. Miranda*, 459 U.S. 14 (1982) (per curiam); *INS v. Hibi*, 414 U.S. 5 (1973) (per curiam). The United States Court of Appeals for the Ninth Circuit has indicated that estoppel against the Government could be possible, but has cautioned that any party asserting it carries a "heavy burden," and that estoppel could lie only where there has been "affirmative misconduct" on the part of the Government. *See Santamaria-Ames v. INS*, 104 F.3d 1127 (9th Cir. 1996); *United States v. Ullyses-Salazar*, 28 F.3d 932 (9th Cir. 1994), *cert. denied*, 514 U.S. 1020 (1995); *Santiago v. INS*, 526 F.2d 488 (9th Cir. 1975) (en banc), *cert. denied*, 425 U.S. 971 (1976).

Clearly, this is not a case where the Government engaged in affirmative misconduct by placing the respondent in exclusion proceedings in 1993. The respondent had been out of the United States for 4 months. While an absence of this length may in some circumstances come within the purview of *Fleuti*, it was by no means "clear error," as alleged by the respondent, much less affirmative misconduct, to place the respondent in exclusion proceedings after such a long absence.

The respondent's citation at oral argument to the decision in *Jubilado v. INS*, 819 F.2d 210 (9th Cir. 1987), is not dispositive. There, in what the court characterized as a "difficult" *Fleuti* issue, the court held that a 3-month departure did come within the *Fleuti* doctrine. *Id.* at 214. In fact, that decision was followed in this case, when the exclusion proceedings were terminated and the respondent was placed in deportation proceedings. The case does not in any way hold that the decision to initially place the alien in exclusion proceedings was affirmative misconduct. We note that exclusion proceedings are a proper forum for determining whether or not the *Fleuti* doctrine should apply. *See Landon v. Plasencia*, 459 U.S. 21 (1982).

Once it was determined that the respondent should be in deportation proceedings, there was no undue delay in initiating proceedings, or in bringing them to a conclusion. As indicated above, the Immigration Judge granted several continuances that were requested by the respondent, over the objection of the Service.

## III. DEPORTABILITY UNDER SECTION 241(a)(2)(A)(i)

The respondent contends that there are two reasons why he cannot properly be found deportable for having been convicted of a crime involving moral turpitude within 5 years of entry. First, only the criminal information indicates the date of commission of the offense in question; the judgment of conviction itself does not mention a date. Second, even the information states only that the offense occurred "on or about" August 6, 1985. The respondent contends that this is too vague to prove deportability by the requisite clear, unequivocal, and convincing evidence. *See Woodby v. INS,* 385 U.S. 276 (1966).

The finding of deportability under section 241(a)(2)(A)(i) is based on the entire record of conviction. The record of conviction includes the information. *See, e.g., Matter of Madrigal*, 21 I&N Dec. 323 (BIA 1996), and cases cited therein. The information is, in fact, referred to in the judgment of conviction in this case. The information reflects that the respondent committed his crime within 5 years of entry.

The fact that the information states, as is commonly done, that the offense occurred "on or about" August 6, 1985, does not render the charge too vague to be sustained. The respondent was admitted to the United States in March

1981. The crime was committed in August  1985, well within 5 years of the respondent's entry. The information was sufficiently clear about the date of commission, such that a finding of deportability could properly be based on it. *See generally Ballantine's Law Dictionary* 888 (3d ed. 1969).


IV. DEPORTABILITY UNDER SECTION 241(a)(2)(A)(iii)

The respondent concedes that if his conviction occurred today, it  would constitute an aggravated felony for which he could be deported. However, he does not concede that the current aggravated felony definition applies to him, because his offense was not considered an aggravated felony prior to enactment of the IIRIRA. Moreover, he argues that even if the present definition applies to him, he still is not deportable under the aggravated felony ground of deportation. The respondent points out that section 7344(b) of the Anti-Drug Abuse Act of 1988, Pub. L. No. 100-690, 102 Stat. 4181, 4470-71 ("ADAA"), clearly states that the section 241(a)(2)(A)(iii) ground of deportability applies only to convictions occurring on or after the date of enactment of that legislation. He asserts that because his conviction was before that date, he is not deportable on that ground.

The respondent's argument regarding the applicability of the aggravated felony ground of deportation was recently addressed and rejected by this Board. In *Matter of Lettman*, 22 I&N Dec. 365 (BIA 1998), we held that section 602 of the Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978, 5077 ("1990 Act"), eliminated the date restriction on the aggravated felony ground of deportation set forth in section 7344(b) of the ADAA. We therefore concluded that an alien who is charged, on or after March 1, 1991,[1] with deportability based on an aggravated felony conviction is subject to deportation, regardless of the date of conviction, if the crime fits within the aggravated felony definition. We have noted the arguments made by the respondent on this issue in his supplemental brief. They do not persuade us that *Matter of Lettman* was wrongly decided. *Lettman* is dispositive of this aspect of the respondent's case.[2]

This case, however, raises an issue that we left open in *Matter of*

---

[1] See section 602(d) of the 1990 Act, 104 Stat. at 5082, regarding the effective date of the provision; *see also Matter of Lettman, supra.*

[2] We note that the Eleventh Circuit recently vacated its previous decision in the *Lettman* case, insofar as it relates to the issue involved here; Part A of the court's decision, relating to jurisdiction, remains in effect. *See Lettman v. Reno*, 185 F.3d 1216 (11th Cir. 1999), *vacating in part Lettman v. Reno,* 168 F.3d 463 (11th Cir. 1999).  We further note that the court's previous, now vacated, opinion was decided without reference to this Board's precedent, because the court was reviewing an earlier Board panel decision in the case, which we vacated in our precedent decision.

*Lettman, supra*, at 4 n.4, which is alluded to by the respondent in his brief. The respondent asserts that because his conviction occurred in 1987, it did not come within the *definition* of an aggravated felony until enactment of the IIRIRA, and he therefore cannot now be considered an aggravated felon. The alien in *Matter of Lettman* was convicted of third degree murder. That offense has been included in the definition of an aggravated felony since the term was first used, in the ADAA, and the definition was initially applied retroactively to convictions occurring on, before, or after the 1988 enactment of the ADAA. *See Matter of A-A-*, 20 I&N Dec. 492 (BIA 1992). There was therefore no question that the aggravated felony definition applied to Lettman's case.

The ADAA narrowly defined the term "aggravated felony" as "murder, any drug trafficking crime as defined in section 924(c)(2) of title 18, United States Code, or any illicit trafficking in any firearms or destructive devices as defined in section 921 of such title, or any attempt or conspiracy to commit any such act, committed within the United States." ADAA § 7342, 102 Stat. at 4469-70. Thus, it did not include the respondent's crime, robbery.

Since the ADAA first used and defined the term aggravated felony in 1988, Congress has expanded the definition on several occasions, signaling its growing concern with criminal aliens. In the 1990 Act, for example, the definition of an aggravated felony was amended to include, inter alia, a crime of violence for which the term of imprisonment imposed is at least 5 years. The respondent's offense, a crime of violence for which he was sentenced to 6 years' imprisonment, would come within that definition. However, section 501(b) of the 1990 Act, 104 Stat. at 5048, applied that definition only to offenses committed on or after enactment of the 1990 Act. *See Matter of A-A-, supra*. Thus, the definition would not have applied to the respondent's offense. Similarly, other amendments to the aggravated felony definition have specified that the amendments applied only prospectively. *See* Immigration and Nationality Technical Corrections Act of 1994, Pub. L. No. 103-416, §§ 222(a), (b), 108 Stat. 4305, 4320-22 (enacted Oct. 25, 1994); AEDPA §§ 440(e), (f), 110 Stat. at 1276-78.

With the IIRIRA, however, Congress made clear its intention to do away with the different effective dates and to establish an aggravated felony definition that would be universally applied, regardless of the date of conviction. Section 321(b) of the IIRIRA states in its entirety:

> EFFECTIVE DATE OF DEFINITION——Section 101(a)(43) (8 U.S.C. 1101(a)(43)) is amended by adding at the end the following new sentence: "Notwithstanding any other provision of law (including any effective date), the term applies regardless of whether the conviction was entered before, on, or after the date of enactment of this paragraph."

IIRIRA § 321(b), 110 Stat. at 3009-628. Relying on section 321(b), this Board has, on at least four occasions, applied the 1996 revised aggravated

felony definition to cases pending on the date of enactment of the IIRIRA, with little or no discussion. *See Matter of L-S-J-,* 21 I&N Dec. 973 (BIA 1997); *Matter of Batista-Hernandez*, 21 I&N Dec. 955 (BIA 1997); *Matter of Noble,* 21 I&N Dec. 672 (BIA 1997); *Matter of Yeung*, 21 I&N Dec. 610 (BIA 1996).

The respondent contends, however, that section 321(b) only "purports" to abolish earlier effective dates for the aggravated felony definition. The respondent looks to section 321(c) to support his assertion that the IIRIRA aggravated felony definition should not apply to his case. The citation to section 321(c) is unavailing. That section provides:

> EFFECTIVE DATE.——The amendments made by this section shall apply to actions taken on or after the date of the enactment of this Act, regardless of when the conviction occurred, and shall apply under section 276(b) of the Immigration and Nationality Act only to violations of section 276(a) of such Act occurring on or after such date.

IIRIRA § 321(c), 110 Stat. at 628.

Reading these two provisions of section 321 together, we find that section 321(b) establishes the effective date of the amended definition of an aggravated felony. That is, it establishes that the definition can reach back to encompass any conviction, regardless of when it occurred. Section 321(c) does, however, limit the definition to a certain extent, by stating that the amendments will apply only to "actions taken" after the date of the IIRIRA's enactment, September 30, 1996. Thus, the date of the conviction is important only if the amended definition does not apply because of the "actions taken" restriction.

The issue of what "actions taken" means has already been addressed in several cases. Both the Ninth Circuit and this Board have held that the Board's consideration of a case constitutes an "action taken" within the meaning of section 321(c). *See Valderrama-Fonseca v. INS,* 116 F.3d 853 (9th Cir. 1997); *Matter of Batista-Hernandez, supra*, at 962. Other courts that have considered this issue agree that the term "actions taken" includes, at a minimum, actions and decisions of the Attorney General or her delegates. *See Choeum v. INS*, 129 F.3d 29 (1st Cir. 1997); *Mendez-Morales v. INS,* 119 F.3d 738 (8th Cir. 1997) (holding that "actions taken" also includes court review for purposes of section 321(c)).

Moreover, the regulations also support our holding that the IIRIRA aggravated felony definition applies to the respondent in this case. According to 8 C.F.R. § 1.1(t) (1999), "The term aggravated felony means a crime (or a conspiracy or attempt to commit a crime) described in section 101(a)(43) of the Act. This definition is applicable to any proceeding, application, custody determination, or adjudication pending on or after September 30, 1996 . . . ." This provision was added to the regulations after enactment of the IIRIRA and clearly encompassed the IIRIRA aggravated felony definition. *See* 62 Fed. Reg. 10,330 (1997). Proceedings in this case

were pending on and after September 30, 1996, and therefore the IIRIRA definition must apply.

Based on the language of sections 321(b) and (c), the uniform interpretation that the phrase "actions taken" under section 321(c) includes actions by the Board, and the provision at 8 C.F.R. § 1.1(t), we conclude that the respondent's offense comes within the definition of an aggravated felony, as amended by the IIRIRA, and that the IIRIRA definition does apply to this respondent's case. His deportability under section 241(a)(2)(A)(iii) is therefore established.

## V. APPLICABILITY OF *MATTER OF SORIANO*

The respondent argues that even if he is found deportable as an aggravated felon, he should not be barred from obtaining a section 212(c) waiver by the Attorney General's decision in *Matter of Soriano*, 21 I&N Dec. 516 (BIA 1996; A.G. 1997). In that decision, the Attorney General held that section 440(d) of the AEDPA, 110 Stat. at 1277, must be applied to section 212(c) cases that were pending on the date of enactment of that law. The respondent contends that Supreme Court decisions dealing with the retroactive effect of statutes that were enacted after the Attorney General issued her decision in *Soriano* effectively overruled that decision, and we are bound to apply them, not *Soriano*.

We recognize counsel's arguments regarding the recent Supreme Court decisions on retroactivity. However, as the respondent concedes, neither of those decisions, *Lindh v. Murphy*, 521 U.S. 320 (1997), and *Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939 (1997), directly overrules *Matter of Soriano*, *supra*. Nor did these decisions interpret the statutory provision at issue in *Soriano*. We are also aware of recent circuit court decisions that have rejected the Attorney General's application of the AEDPA's section 212(c) restrictions to cases that were pending when the AEDPA was enacted. *See Pak v. Reno*, 196 F.3d 666 (6th Cir. 1999); *Shah v. Reno*, 184 F.3d 719 (8th Cir. 1999); *Mayers v. United States Dep't of INS*, 175 F.3d 1289 (11th Cir. 1999); *Sandoval v. Reno*, 166 F.3d 225 (3d Cir. 1999); *Henderson v. INS*, 157 F.3d 106 (2d Cir. 1998), *cert. denied sub nom. Reno v. Navas,* 119 S. Ct. 1141 (1999); *Goncalves v. Reno*, 144 F.3d 110 (1st Cir. 1998), *cert. denied*, 119 S. Ct. 1140 (1999). However, none of these cases is from the Ninth Circuit, where this case arises. Moreover, circuit courts that have addressed this issue more recently have upheld the Attorney General's decision in *Matter of Soriano, supra*. *See Requena-Rodriguez v. Pasquarell,* 190 F.3d 299 (5th Cir. 1999); *Turkhan v. Perryman,* 188 F.3d 184 (7th Cir. 1999)(as applied to aliens who have no colorable defense to deportability); *see also Jurado-Gutierrez v. Greene,* 190 F.3d 1135 (10th Cir. 1999).

1097

We remain bound by the Attorney General's decision in *Matter of Soriano, supra*. Under that decision, the respondent, an alien deportable as an aggravated felon, is statutorily ineligible for a section 212(c) waiver.

The respondent also argues that applying section 440(d) of the AEDPA to his case violates the Equal Protection Clause of the Constitution by precluding persons in deportation proceedings from obtaining section 212(c) relief while allowing similarly situated individuals in exclusion proceedings to seek such relief. We have held that aliens in exclusion proceedings are still eligible, following enactment of the AEDPA, for section 212(c) waivers. *See Matter of Fuentes-Campos*, 21 I&N Dec. 905 (BIA 1997); *see also Matter of Gonzalez-Camarillo,* 21 I&N Dec. 937 (BIA 1997).

The Board's reasoning in *Matter of Fuentes-Campos, supra*, was rejected by the Ninth Circuit in *United States v. Estrada-Torres*, 179 F.3d 776 (9th Cir. 1999). The court there held that the AEDPA amendment to section 212(c) "eliminates discretionary relief for both excludable and deportable legal permanent residents," and that it therefore does not violate the Equal Protection Clause. *Id.* at 779. The court thereby signaled its view that the section 212(c) bar must be applied to both excludable and deportable aliens if it is to pass constitutional muster. However, the court gave no indication of its view as to whether the AEDPA bar may be applied at all to aliens who were already in proceedings on the date of the AEDPA's enactment. In the *Estrada-Torres* case, all the pertinent events, including the alien's conviction and the issuance of the Order to Show Cause, occurred after enactment of the AEDPA. The questions raised and decided in the *Soriano* case were therefore not at issue in *Estrada-Torres*. Under the Attorney General's *Soriano* decision, the respondent in this case is ineligible for section 212(c) relief.

Finally, the respondent urges us to allow him to apply for section 212(c) relief on the ground that a "manifest injustice" would result if he is denied that opportunity. The respondent's situation is not significantly more compelling than those of many aliens who come within the Attorney General's ruling in *Matter of Soriano, supra*. In any event, no matter how sympathetic the facts may be, we are bound by that decision, which bars the respondent from the relief he seeks.

## VI. CONCLUSION

Because we find the respondent deportable as charged, and ineligible for relief from deportation, his appeal must be dismissed. Accordingly, the following order will be entered.

**ORDER:** The appeal is dismissed.

Board Member Neil P. Miller did not participate in the decision in this case.

*CONCURRING AND DISSENTING OPINION:* Paul W. Schmidt, Chairman, in which Lory Diana Rosenberg and John Guendelsberger, Board Members, joined

I respectfully concur in part and dissent in part.


## I. LETTMAN

I recognize that *Matter of Lettman*, 22 I&N Dec. 365 (BIA 1998), continues to control the issue of deportability in this case. In *Lettman*, along with Board Members Guendelsberger and Rosenberg, I expressed my disagreement with the reasoning of the majority. I concluded that the aggravated felony ground of deportability applies only to convictions that occurred on or after November 18, 1988. Nevertheless, because *Matter of Lettman* arose in the jurisdiction of the United States Court of Appeals for the Eleventh Circuit, Board Member Guendelsberger and I felt constrained by the Eleventh Circuit's decision in *Lopez-Amaro v. INS*, 25 F.3d 986 (11th Cir. 1994), *cert. denied*, 513 U.S. 1146 (1995), to concur in the application of the aggravated felony deportation ground to Mr. Lettman's 1987 conviction.

I continue to believe that the retroactive application of the aggravated felony deportation ground in *Matter of Lettman, supra,* is incorrect.[1] My conclusion is reinforced by the observation that the application of the aggravated felony deportation ground to convictions occurring prior to November 18, 1988, contravenes the regulations set forth at 8 C.F.R. § 240.56 (1999), which were promulgated after enactment of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546 ("IIRIRA"). That regulation recognizes that the immigration consequences of provisions of the Anti-Drug Abuse Act of 1988, Pub. L. No. 100-690, 102 Stat. 4181, that had explicit prospective effective dates were unaffected by the IIRIRA. Normally, we give such regulatory interpretations great, perhaps controlling, weight. *See Matter of Ponce de Leon*, 21 I&N Dec. 154 (BIA 1996, 1997; A.G. 1997).

Notwithstanding my disagreement with the reasoning in *Matter of Lettman*, I agree with the majority that our consideration of this case is an "action taken" under section 321(c) of the IIRIRA, 110 Stat. at 3009-628. Therefore, because *Matter of Lettman, supra*, remains controlling in the

---

[1]The correctness of the majority decision in *Matter of Lettman* was called into question when it was appealed to the Eleventh Circuit. However, that court's decision rejecting *Matter of Lettman* was recently vacated, and the case will be reargued. *See Lettman v. Reno*, 185 F.3d 1216 (11th Cir. 1999), *vacating in part Lettman v. Reno*, 168 F.3d 463 (11th Cir. 1999).

case before us, I must concur in the finding of deportability.


## II. *SORIANO*

Ordinarily, I also would concur in the conclusion that we are bound to follow the Attorney General's ruling in *Matter of Soriano*, 21 I&N Dec. 516 (BIA 1996; A.G. 1997). However, the Attorney General decided *Soriano* on February 1, 1997. In the 2½ years since that decision, almost every court to squarely consider the issue has rejected the Attorney General's reasoning in *Soriano. See, e.g., Shah v. Reno*, 184 F.3d 719 (8th Cir. 1999); *Mayers v. United States Dep't of INS*, 175 F.3d 1289 (11th Cir. 1999); *Sandoval v. Reno,* 166 F.3d 225 (3d Cir. 1999); *Henderson v. INS*, 157 F.3d 106 (2d Cir. 1998), *cert. denied sub nom. Reno v. Navas*, 119 S. Ct. 1141 (1999); *Goncalves v. Reno*, 144 F.3d 110 (1st Cir. 1998), *cert. denied*, 119 S. Ct. 1140 (1999).[2]

Moreover, in rejecting *Soriano*, the courts have generally cited the same two Supreme Court decisions relied on by the respondent in this case. *See, e.g., Mayers v. INS, supra,* at 1302-04 (discussing *Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939 (1997), and *Lindh v. Murphy*, 521 U.S. 320 (1997), as inconsistent with *Soriano*). Furthermore, the Supreme Court has taken the somewhat unusual step of denying the Solicitor General's petition for certiorari to resolve this issue. *Reno v. Navas, supra; Goncalves v. Reno, supra.*

This is not an "ordinary" situation. We recently recognized that we are not bound to follow rulings of the Attorney General where they have been overtaken by later developments in the law. *See Matter of Roldan*, 22 I&N Dec. 512 (BIA 1999) (stating that the Board can abandon long-standing rulings of the Attorney General on the basis of later developments in the law).

The time has come for us to reexamine *Soriano* in light of the significant intervening case law, no matter how painful or cumbersome this process might be. It is simply not fundamentally fair to continue dismissing appeals on the basis of *Soriano* without considering the reasoning of the many courts that squarely have rejected the *Soriano* rationale. Nor is it permissible to "hold" without decision cases of detained aliens who are chal-

---

[2]Recently, a court of appeals for the first time held that *Soriano* was generally correct, although even that court indicated that *Soriano* should not apply where an alien has a colorable defense to deportability. *Turkhan v. Perryman,* 188 F.3d 814 (7th Cir. Aug. 16, 1999); *see also Jurado-Gutierrez v. Greene,* 190 F.3d 1135 (10th Cir. 1999) (holding that section 440(d) of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214, 1277, has no retroactive effect when applied to aliens whose criminal convictions took place prior to April 24, 1996, but who had not yet applied for discretionary relief).

lenging *Soriano*.

The majority's failure to meaningfully address counsel's arguments that are based on numerous post-*Soriano* decisions by the Supreme Court and the lower courts deprives the respondent of a reasoned determination in this case. It is unreasonable to require all individuals in the respondent's situation to litigate in federal court to receive just consideration of their well-supported arguments for a different result.

Therefore, I respectfully dissent from the majority's decision to apply *Soriano* without reexamining its rationale in light of the current law.

Board Member Gustavo D. Villageliu dissents without opinion.