Rodolfo **JUBILADO,**
**Petitioner-Appellant,**

v.

**UNITED STATES of America,**
**Respondent-Appellee.**

No. 86–1760.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 6, 1987.

Decided June 4, 1987.

---

George K. Noguchi, Honolulu, Hawaii, for petitioner-appellant.

Joanna London, Honolulu, Hawaii, for respondent-appellee.

Before POOLE, NORRIS and BRUNETTI, Circuit Judges.

BRUNETTI, Circuit Judge:

Rodolfo Jubilado appeals the district court's denial of his petition for a writ of habeas corpus. Jubilado contests an August 1985 Immigration Judge's (IJ) exclusion and deportation order which was affirmed by the Board of Immigration Appeals (BIA). He claims that: (1) because he did not "enter" the United States in August 1982 his deportability should have been determined in deportation rather than exclusion proceedings; (2) the Immigration and Naturalization Service (INS) did not have authority to parole him when he returned to Hawaii at that time; and (3) even if he is excludable, he should be permitted a waiver of excludability because his deportation will cause his family extreme hardship.

We agree that Jubilado's August 1982 return to this country did not constitute an "entry" under 8 U.S.C. § 1101(a)(13). Therefore, he was improperly placed in exclusion proceedings. We thus reverse the order of exclusion and deportation and remand to the BIA for proceedings consistent with our opinion.

I

BACKGROUND

Jubilado is a citizen of the Philippines who was admitted to the United States,

along with two of his children, in February 1981 as a permanent resident. He subsequently was suspected of committing murder, but on April 29, 1982, a grand jury refused to indict him. Thereafter, on May 12, 1982, Jubilado left for the Philippines to bring his wife and four remaining children to the United States.

On May 26, 1982, a second grand jury returned an indictment on the murder charge. Jubilado's mother wrote to him in the Philippines informing him of the indictment. After preparing his family for their move to the United States, Jubilado, his wife, and the four children returned to the United States on August 15, 1982. The INS did not admit Jubilado but paroled him into the United States for prosecution pursuant to the pending indictment.

Jubilado pled guilty to a manslaughter charge in May 1983. On May 1, 1985, he was released from prison. The INS immediately instituted exclusion proceedings pursuant to 8 U.S.C. § 1182(a)(9) (an alien convicted of a crime of moral turpitude is excludable). The IJ found Jubilado excludable and ordered him deported. The BIA dismissed Jubilado's appeal on November 18, 1985.

Jubilado filed a writ of habeas corpus in the district court, which is the proper route of appeal from an exclusion order. 8 U.S.C. § 1105a(b). The court denied the petition on February 10, 1986, and Jubilado timely appealed.

## II

### DISCUSSION

■ Jubilado claims that the INS should have examined the effect of his conviction on his permanent resident status in a deportation rather than an exclusion proceeding. A deportation proceeding provides an alien with greater procedural safeguards than does an exclusion proceeding. *Maldonado-Sandoval v. INS*, 518 F.2d 278, 280 (9th Cir.1975). A permanent resident alien

such as Jubilado is subject to exclusion, rather than deportation, under 8 U.S.C. § 1182(a) if his return to the United States from a foreign port constitutes an "entry" under 8 U.S.C. § 1101(a)(13). *Landon v. Plasencia*, 459 U.S. 21, 27–28, 103 S.Ct. 321, 326–27, 74 L.Ed.2d 21 (1982); *Maldonado-Sandoval*, 518 F.2d at 280 ("Although 8 U.S.C. § 1182(a) does not by its terms mention 'entry,' it is plain that this section specifies the classes of aliens excludable *at the time of entry*."). Section 1101(a)(13) defines an "entry" for a lawful permanent resident alien as "any coming ... into" the United States from a foreign port unless the departure to the foreign port "was not intended or reasonably to be expected by him or his presence in a foreign port ... was not voluntary."

The Supreme Court has construed the intent exception to section 1101(a)(13) as meaning an *"intent to depart* in a manner which can be regarded as meaningfully interruptive of the alien's permanent residence." *Rosenberg v. Fleuti*, 374 U.S. 449, 462, 83 S.Ct. 1804, 1812, 10 L.Ed.2d 1000 (1963) (emphasis added). The Court in *Fleuti* examined three factors to conclude that Fleuti, a permanent resident alien, did not "enter" the United States after a two or three hour trip to Mexico. The Court looked to the length of the trip, its purpose, and the necessity of travel documents. *Id.* The Court stated that this list of factors was not exclusive and that "the operation of these and other possibly relevant factors remains to be developed 'by the gradual process of judicial inclusion and exclusion.'" *Id.* (quoting *Davidson v. New Orleans*, 96 U.S. (6 Otto) 97, 104, 24 L.Ed. 616 (1877)).

■ In construing *Fleuti*, this court and other circuit courts have engaged in a balancing of the *Fleuti* factors. This court has held that the "length of the absence is relevant, but not alone determinative." *Toon-Ming Wong v. INS*, 363 F.2d 234, 236 (9th Cir.1966);[1] *see Heitland v. INS*, 551

---

1. *Toon-Ming Wong* and *Kamheangpatiyooth v. INS*, 597 F.2d 1253 (9th Cir.1979), both construe *Fleuti* and other cases defining "entry" to determine if an alien has satisfied the continuous

presence requirement for suspension of deportation under 8 U.S.C. § 1254(a)(1). In *Wadman v. INS*, 329 F.2d 812, 815 (9th Cir.1964), this court first determined that a similar test applies

F.2d 495, 504 (2d Cir.), *cert. denied*, 434 U.S. 819, 98 S.Ct. 59, 54 L.Ed.2d 75 (1977) ("the significance of an absence will depend. upon the relevant factors and circumstances found in each case"). An absence may constitute an entry, even though its duration is brief, if its purpose is unlawful. *Cuevas-Cuevas v. INS*, 523 F.2d 883 (9th Cir.1975); *Palatian v. INS*, 502 F.2d 1091 (9th Cir.1974). On the other hand, a more lengthy absence may not be deemed an entry if its purpose is bona fide and consistent with . permanent resident status. *Itzcovitz v. Selective Service Local Board No. 6*, 447 F.2d 888 (2d Cir.1971).

■ Jubilado was absent from the United States for three months and traveled several thousand miles. Yet, the purpose of this trip, tying up his affairs and moving the rest of his family to the United States, demonstrates Jubilado's intent to preserve, not interrupt, his permanent resident status.

In *Itzcovitz*, the Second Circuit held that a permanent resident alien's return from a three-week trip out of the United States to attend a training course conducted by his employer would not constitute an entry. 447 F.2d 888. *Itzcovitz* focused, in large part, on the purposes of Itzcovitz's trip to find that the trip would not subject Itzcovitz to exclusion. The sole purpose of the trip was "to qualify [Itzcovitz] for more useful employment service as he continues his permanent residence." *Id.* at 894. Itzcovitz had every intention of retaining permanently his residence and the trip's purpose was "entirely *bona fide*, honorable and lawful." *Id.* Similarly, the purpose of Jubilado's absence indicates that he too had every intention of permanently retaining his residence. Like the purpose of Itzcovitz's trip, the bona fide and lawful purpose of Jubilado's trip was to move his family from the Philippines to the United States

and to return with them to continue and improve his life as a United States resident.

The language of section 1101(a)(13) requires that we examine the alien's intent upon his departure. When Jubilado left for the Philippines he intended to wind up his affairs and return with his family to the United States. Nothing in the record suggests that during his absence his intent changed. Indeed, the BIA found that during his trip to the Philippines Jubilado "settled his affairs, tied up loose ends, and ... prepared his family for their relocation to the United States." Further, the BIA rejected the IJ's implication that Jubilado was fleeing criminal charges in the United States. Rather, the BIA properly found that Jubilado departed, after the grand jury refused to indict him, to settle his affairs and bring his family to this country. Moreover, Jubilado returned to the United States after he concluded his affairs with knowledge of the second indictment. He also told his wife before they left the Philippines that he could be convicted and imprisoned. These facts clearly show that the purpose of Jubilado's trip was wholly consistent with his permanent resident status, and that his intent was that he and his family establish a life as United States residents. Additionally, Jubilado's parents, son, and daughter remained in the United States. Those ties also indicate Jubilado's intent not to interrupt his permanent resident status. *See Lozano-Giron v. INS*, 506 F.2d 1073, 1079 (7th Cir.1974).

The third *Fleuti* factor is the presence of travel documents. The INS argues that because Jubilado had to purchase airline tickets, obtain travel documents for his family, and carry his passport and alien registration card to be re-admitted, Jubilado should have considered the implications involved in leaving the country. *See Fleuti*, 374 U.S. at 462, 83 S.Ct. at 1812. Yet, as this court noted in *Kamheangpatiyooth*

in defining a "break in the continuity of physical presence" under § 1254(a)(1) and defining an "entry" under section 1101(a)(13). However, the Supreme Court recently stated that *Fleuti's* definition of an entry is "essentially irrelevant" to a determination of the continuous presence requirement of § 1254(a)(1). *INS v. Phinpath-*

*ya*, 464 U.S. 183, 193, 104 S.Ct. 584, 591, 78 L.Ed.2d 401 (1984). Thus, *Toon-Ming Wong* and *Kamheangpatiyooth* are no longer good precedent for suspension of deportation cases. Nonetheless, they remain valuable precedent for interpreting *Fleuti*.

v. *INS*, 597 F.2d 1253, 1259 (9th Cir.1979), arrangements made by the alien prior to departure may "confirm the essential continuity of his presence in this country and the lack of any reasonable basis for anticipating that the planned absence might imperil his status." The travel documents Jubilado obtained for his family enabled them to return with him to the United States. Thus, rather than making him consider that leaving the country might harm his permanent resident status, Jubilado's arrangements prior to his departure focused on his return and the continuity of his residence in the United States.

The BIA and district court relied on *Munoz-Casarez v. INS*, 511 F.2d 947 (9th Cir. 1975) (per curiam), for their decision that Jubilado "entered" the United States in August 1982. Munoz-Casarez, a permanent resident alien, left the United States for thirty days to visit his family in Durango, Mexico. Although Munoz-Casarez stated that when he departed he intended to return to the United States, this court stated that intent to return does not alone mean Munoz-Casarez did not enter. *Munoz-Casarez* relied on the purposeful nature of the trip, its length and its distance to find the alien's return an entry. The per curiam opinion does not, however, discuss the relevance of the purpose of Munoz-Casarez's trip, to visit his parents and a sister who was ill, to its holding that Munoz-Casarez's departure was meaningfully interruptive of his permanent residence. We feel *Fleuti* requires that the trip's purpose be considered. Furthermore, *Munoz-Casarez* is distinguishable because unlike the purpose of Munoz-Casarez's trip, the entire purpose of Jubilado's was to bring his family to the United States. Thus, in our weighing of the *Fleuti* factors and others, *Munoz-Casarez* is distinguishable and not controlling.

This case presents a difficult entry issue. On the one hand, Jubilado's absence was lengthy. On the other, the purpose of this trip is one fully in conformity with the continuity of his permanent resident status. Moreover, we recognize that "a resident alien who leaves this country is to be regarded as retaining certain basic rights,"

*Fleuti*, 374 U.S. at 460, 83 S.Ct. at 1811, and that this country's " 'hospitality, once granted, shall not be subject to meaningless and irrational hazards.' " *Id.* at 459, 83 S.Ct. at 1810 (quoting *DiPasquale v. Karnuth*, 158 F.2d 878, 879 (2d Cir.1947)). The purpose of Jubilado's absence and the presence of family members in the United States are sufficiently important to require us to find that Jubilado's return to the United States did not amount to an entry. As a permanent resident alien, Jubilado had a right to have the effect of his conviction determined in a deportation proceeding with its greater procedural safeguards. The BIA's contrary holding is not supported by substantial evidence.

Since we hold that Jubilado did not enter, his parole was improper, *see* 8 U.S.C. § 1182(d)(5)(A) (parole limited to aliens who enter), and we need not reach Jubilado's hardship claim. We remand this case to the BIA for proceedings consistent with the views expressed herein.