**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

RODOLFO CAMINS,

*Petitioner,*

v.

ALBERTO R. GONZALES, Attorney General,

*Respondent.*

No. 05-70291

Agency No.
A92-868-926

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
January 12, 2007—San Francisco, California

Filed August 28, 2007

Before: Procter Hug, Jr. and William A. Fletcher,
Circuit Judges, and H. Russel Holland,* District Judge.

Opinion by Judge William A. Fletcher

---

*The Honorable H. Russel Holland, Senior United States District Judge
for the District of Alaska, sitting by designation.

10721

**COUNSEL**

Zachary Miller Nightingale, Beth Feinberg, Van Der Hout, Brigagliano & Nightingale, LLP, San Francisco, California, for the petitioner.

Allen W. Hausman, U.S. Department of Justice, Washington, D.C., for the respondent.

**OPINION**

W. FLETCHER, Circuit Judge:

Prior to passage of § 301(a)(13) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), a lawful permanent resident ("LPR") who pled guilty to an offense making him "inadmissible" retained the right under former § 101(a)(13) of the Immigration and Nationality Act ("INA"), as interpreted by *Rosenberg v. Fleuti*, 374 U.S. 449 (1963), to make "innocent, casual, and brief" overseas trips without being classified as seeking "entry" upon return and thus being exposed to a charge of being inadmissible. In this petition for review, we must decide two questions. First, we must decide whether IIRIRA § 301(a)(13) abrogated the old INA § 101(a)(13) and the *Fleuti* doctrine. If so, an LPR who has been convicted of, or who has admitted to, commission of an offense making him

inadmissible cannot travel overseas, even for an innocent, casual, and brief trip, without being exposed to a charge of inadmissibility upon return to the United States. Second, if IIRIRA § 301(a)(13) did abrogate the old INA § 101(a)(13) and the *Fleuti* doctrine, we must decide whether this provision may be applied retroactively to LPRs who acted in reasonable reliance on the old INA § 101(a)(13), as interpreted by *Fleuti*. We hold that IIRIRA § 301(a)(13) did abrogate the old INA § 101(a)(13) and the *Fleuti* doctrine, but that the new law cannot be applied retroactively to LPRs who acted in reasonable reliance on the old law prior to IIRIRA's effective date.

## I.    Background

Rodolfo Camins is a fifty-five-year-old national of the Philippines who has lived in the United States since 1978. Camins was granted temporary resident status in 1988 and has been an LPR since 1991. He resides in California with his wife and seventeen-year-old daughter, who are both United States citizens. Camins has a steady job, pays taxes, and provides financial support and health insurance for his family.

In January 1996, Camins pled guilty to sexual battery under California Penal Code § 243.4. He was convicted and sentenced to a term of one year, of which he served eight months. Following his release from prison, Camins was given sex offender treatment for three and a half years.

On January 2, 2001, Camins was taken into custody by agents of the Immigration and Naturalization Service (now the Department of Homeland Security) at the San Francisco International Airport, when he returned with his wife and daughter from a three-week trip to visit his ailing mother in the Philippines. While in custody, Camins was served with a Notice to Appear placing him in removal proceedings as an LPR seeking admission under INA § 101(a)(13)(C)(v), 8 U.S.C. § 1101(a)(13)(C)(v). The Notice to Appear charged that he was inadmissible under INA § 212(a)(2)(A)(i)(I), 8

U.S.C. § 1182(a)(2)(A)(i)(I), because his conviction was for a crime involving moral turpitude.

At a hearing in September 2001, Camins conceded removability, designated the Philippines as the country of removal, and requested relief from removal under former INA § 212(c), 8 U.S.C. § 1182(c) (repealed 1996). The Immigration Judge ("IJ") denied Camins' application for § 212(c) relief. Camins appealed to the Board of Immigration Appeals ("BIA"), contending that his order of removal was invalid because he should not have been charged with inadmissibility. He pointed out that under the old INA § 101(a)(13), 8 U.S.C. § 1101(a)(13), and *Rosenberg v. Fleuti*, 374 U.S. 449 (1963), an LPR who travels outside the United States for a brief period for a legitimate purpose could not be classified as seeking "entry," and thus subjected to a charge of inadmissibility, upon his return. He contended that the old INA § 101(a)(13), and the *Fleuti* doctrine, should be applied to him. Camins also argued that the IJ had applied an incorrect legal standard for relief from removal. The BIA affirmed the IJ's order of removal and denial of relief from removal. Camins now petitions for review by this court.

We have jurisdiction pursuant to 8 U.S.C. § 1252(a)(2)(D), as amended by the REAL ID Act of 2005, to review the constitutional claims and questions of law raised in Camins' petition. *See Fernandez-Ruiz v. Gonzales*, 410 F.3d 585, 586-87 (9th Cir. 2005), *adopted by* 466 F.3d 1121, 1124 (9th Cir. 2006) (en banc). We review questions of law de novo. *See Sinotes-Cruz v. Gonzales*, 468 F.3d 1190, 1194 (9th Cir. 2006); *see also Toro-Romero v. Ashcroft*, 382 F.3d 930, 935 (9th Cir. 2004).

## II.  Discussion

Under the immigration laws, individuals coming into the United States must undergo inspection by immigration officials before entering the country. *See* 8 C.F.R. § 1235.1. In

the case of an alien seeking "admission" (that is, "lawful entry") to the United States, an immigration official may (1) authorize admission, (2) determine the alien is inadmissible, or (3) if the alien cannot "establish to the satisfaction of the examining immigration officer that he or she" is not subject to removal, charge the alien as inadmissible and detain or parole him. *Id.* § 1235.3; *see also* 8 U.S.C. § 1101(a)(13)(A). When Camins returned from the Philippines in January 2001, immigration officials concluded, based on his January 1996 conviction, that he was an alien seeking admission, detained him, and charged him with inadmissibility. Invoking the so-called *Fleuti* doctrine, Camins contends that as an LPR who made only a short trip outside the country for a legitimate purpose he should not have been classified as seeking admission, and thus subjected to a charge of inadmissibility, upon his return.

## A.   *Fleuti* Doctrine

**[1]** Prior to the effective date of IIRIRA, 110 Stat. 3009 (1996), April 1, 1997, INA § 101(a)(13) provided:

> The term "entry" means any coming of an alien into the United States, from a foreign port or place or from an outlying possession, whether voluntarily or otherwise, except that an alien having a lawful permanent residence in the United States shall not be regarded as making an entry into the United States for the purposes of the immigration laws if the alien proves to the satisfaction of the Attorney General that his departure to a foreign port or place or to an outlying possession was not intended or reasonably to be expected by him or his presence in a foreign port or place or in an outlying possession was not voluntary[.]

8 U.S.C. § 1101(a)(13) (repealed 1996). In *Rosenberg v. Fleuti*, 374 U.S. 449 (1963), the Supreme Court held that an

LPR who made an "innocent, casual, and brief" trip across an international border did not "intend[ ]" a "departure" within the meaning of INA § 101(a)(13). *Id.* at 461. Because the LPR was thus not an alien seeking "entry" to the United States upon his return, he was not subject to a charge of inadmissibility. *Id.*

Fleuti, a Swiss national who had attained LPR status in October 1952, visited Mexico for about two hours in August 1956. In 1959, Fleuti was ordered deported on the ground that at the time he returned from Mexico in 1956, he was excludable (now "inadmissible") based on his homosexuality. *Id.* at 450-51. The Supreme Court vacated Fleuti's deportation order, holding that Congress did not intend "to exclude aliens long resident in this country after lawful entry who have merely stepped across an international border and returned in 'about a couple hours.' " *Id.* at 461. The Court explained that under INA § 101(a)(13), only a resident alien who "inten[ds] to depart in a manner which can be regarded as meaningfully interruptive of the alien's permanent residence" is subject to entry requirements, and possible exclusion, when he returns to the United States. *Id.* at 462. In contrast, an alien who makes "an innocent, casual, and brief excursion . . . outside this country's borders may not have . . . 'intended' . . . a departure disruptive of his resident alien status and therefore may not [be] subject . . . to the consequences of an 'entry' into the country on his return." *Id.* The Court articulated three non-exclusive factors for deciding whether a trip is innocent, casual, and brief: first, "the length of time the alien is absent"; second, "the purpose of the visit" and whether it is to "accomplish some object" contrary to the policy of the immigration laws; and third, whether the alien had to "procure any travel documents in order to make [the] trip," a fact that might "cause the alien to consider more fully the implications involved in . . . leaving the country." *Id.*

**[2]** Applying the *Fleuti* doctrine, we held, in *Jubilado v. United States*, 819 F.2d 210 (9th Cir. 1987), that an LPR who

visited the Philippines for more than three months for the purpose of bringing his family to the United States did not intend departure, and therefore was not subject to exclusion proceedings upon his return. *Id.* at 214. In *Kamheangpatiyooth v. INS*, 597 F.2d 1253 (9th Cir. 1979), a case involving the continuous presence requirement for suspension of deportation rather than entry under the old INA § 101(a)(13), we considered the *Fleuti* factors in holding that an LPR who left the United States for a month during the "Christmas semester 'break' " to visit his "gravely ill" mother in Thailand did not intend to relinquish "the attachment to this country demonstrated by [his] 12 years of residence." *Id.* at 1255, 1258. In both *Jubilado* and *Kamheangpatiyooth*, we relied on *Itzcovitz v. Selective Service*, 447 F.2d 888 (2d Cir. 1971). There, the Second Circuit decided in favor of an LPR from Argentina who sought a declaratory judgment that a three-week trip for a training course in Israel conducted by his employer, El Al Israel Airlines, would not subject him to entry and "the threat of being declared an excludable alien upon his return." *Id.* at 889. The court in that case reasoned that Congress did not intend to subject to exclusion an LPR making a "temporary" trip for an "entirely bona fide, honorable and lawful" purpose. *Id.* at 893-94.

## B.   Survival of *Fleuti* Doctrine After IIRIRA

The government does not dispute that Camins' three-week trip to visit his ailing mother in the Philippines would qualify as an innocent, casual, and brief trip under *Fleuti* and subsequent case law. It argues instead that, in enacting IIRIRA in 1996, Congress abrogated the innocent, casual, and brief trip exception to entry for LPRs and replaced *Fleuti*'s subjective intent inquiry with a general presumption that LPRs are not seeking entry, subject to enumerated exceptions. As revised by § 301(a) of IIRIRA, INA § 101(a)(13) now reads:

> (A) The terms "admission" and "admitted" mean, with respect to an alien, the lawful entry of the alien

into the United States after inspection and authorization by an immigration officer.

. . .

(C) An alien lawfully admitted for permanent residence in the United States shall not be regarded as seeking an admission into the United States for purposes of the immigration laws unless the alien —

(i) has abandoned or relinquished that status,

(ii) has been absent from the United States for a continuous period in excess of 180 days,

(iii) has engaged in illegal activity after having departed the United States,

(iv) has departed from the United States while under legal process seeking removal of the alien from the United States, including removal proceedings under this chapter and extradition proceedings,

(v) *has committed an offense identified in section 1182(a)(2) of this title, unless since such offense the alien has been granted relief under section 1182(h) or 1229b(a) of this title*, or

(vi) is attempting to enter at a time or place other than as designated by immigration officers or has not been admitted to the United States after inspection and authorization by an immigration officer.

8 U.S.C. § 1101(a)(13) (emphasis added). If the government's argument about IIRIRA is correct, we assume that Camins could be classed as seeking "admission" (formerly "entry") under subsection (v) of the new § 101(a)(13)(C), 8 U.S.C. § 1101(a)(13)(C)(v), because he has been convicted of a

crime involving moral turpitude, "an offense identified in [8 U.S.C.] section 1182(a)(2)," notwithstanding the fact that his trip was innocent, casual, and brief.

**[3]** The question whether IIRIRA abrogated the *Fleuti* doctrine appears to be one of first impression in this circuit. *Cf. Toro-Romero*, 382 F.3d at 935-36 (applying INA as revised by IIRIRA without considering role of *Fleuti*); *see also Sinotes-Cruz*, 468 F.3d at 1203 (recognizing limited holding of *Toro-Romero*). However, the BIA and three other circuits have held that the *Fleuti* doctrine has not survived IIRIRA's revision of INA § 101(a)(13). *See Matter of Collado-Munoz*, 21 I. & N. Dec. 1061, 1064-65 (BIA 1998) (en banc) (as amended); *Malagon de Fuentes v. Gonzales*, 462 F.3d 498, 501 (5th Cir. 2006); *Olatunji v. Ashcroft*, 387 F.3d 383, 395-96 (4th Cir. 2004); *Tineo v. Ashcroft*, 350 F.3d 382, 395-96 (3d Cir. 2003).

**[4]** In *Matter of Collado-Munoz*, the BIA vacated an IJ's holding that an LPR who "return[ed] to the United States after a 2-week visit to his native country" could not be "properly charged as an arriving alien who was inadmissible" because he "had made only a 'brief, casual, and innocent' departure." 21 I. & N. Dec. at 1062. The BIA concluded that IIRIRA, enacted "[s]hortly before the respondent's return to the United States," had changed the INA so that the *Fleuti* doctrine no longer applied. *Id.* at 1063. Looking first at the plain language of INA § 101(a)(13), as revised, the BIA observed that it "no longer defines the term 'entry' and no longer contains the term 'intended,' which formed the central basis for the Supreme Court's reasoning in [*Fleuti*]. Instead, the amended section specifically defines the circumstances under which a returning [LPR] will be deemed to be seeking admission into the United States." *Id.* at 1065. Based on these general changes, and on the enumerated exception in the new section for travel "for a continuous period in excess of 180 days," the BIA concluded that "Congress . . . amended the law to

expressly preserve some, but not all, of the *Fleuti* doctrine." *Id.* According to the BIA,

> The plain reading of this amended law is that Congress has directed that a returning [LPR] who is described in section 101(a)(13)(C)(i)-(vi) of the Act shall be regarded as "seeking an admission" into the United States, without regard to whether the alien's departure from the United States might previously have been regarded as "brief, casual, and innocent" under the *Fleuti* doctrine.

*Id.* at 1066.

In reaching this conclusion, the majority in *Matter of Collado-Munoz* rejected the arguments of dissenting Board Member Rosenberg, who pointed out that "the statute is utterly silent as to the continued vitality of the *Fleuti* doctrine," 21 I. & N. Dec. at 1075 (Rosenberg, Board Member, dissenting), and that the plain language of INA § 101(a)(13), as revised by IIRIRA, could be read to "mean that those falling into the six categories *may be treated* as seeking to be admitted despite their lawful resident status" rather than "that they *must be treated* as seeking to be admitted." *Id.* at 1067 (emphasis in original). Board Member Rosenberg argued that the *Fleuti* factors should still play a role in a discretionary determination whether an LPR who, in her view, "*may* be treated as an arriving alien" because he falls within one of the six exceptions in the new INA § 101(a)(13), "*will* be treated as such." *Id.* at 1075.

When the BIA explicitly adopts in a published opinion a particular interpretation of an ambiguous provision of the INA, we apply *Chevron* deference to its interpretation and adopt the agency's view "so long as it is reasonable." *Garcia-Quintero v. Gonzales*, 455 F.3d 1006, 1012 (9th Cir. 2006) (citing *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984)). The Third Circuit applied this

rule to the new INA § 101(a)(13) in *Tineo*. Tineo was
detained and charged with inadmissibility based on prior drug
convictions upon returning from a trip of "a few weeks" to his
native country. *Tineo*, 350 F.3d at 388. Considering whether
to apply the BIA's interpretation of the new INA § 101(a)(13)
in *Matter of Collado-Munoz* to Tineo's case, the court
acknowledged that Board Member Rosenberg's arguments
had "some force," and stated that, based on the plain language
of the new INA § 101(a)(13) alone, it "would tend to agree
that the 'shall not . . . unless' construction is sufficiently
ambiguous to permit the consideration of other factors" —
such as the *Fleuti* factors — "even if a returning alien falls
into one of the six enumerated exceptions." *Id.* at 390.

However, the court in *Tineo* emphasized that "Congress not
only altered the grammatical structure by enacting [IIRIRA]
§ 301(a)(13), it also eliminated the key terms 'entry' and
'intended' from § 101(a)(13) and replaced the former statute
with a comprehensive scheme for determining the classifica-
tion of returning aliens." *Id.* at 391. Further, the court noted
that the House Judiciary Committee had stated, with regard to
a former version of IIRIRA § 301(a)(13), that it intended to
"preserve[ ] a portion of the *Fleuti* doctrine . . . [but] overturn
certain interpretations of *Fleuti*." *Id.* at 392 (quoting H.R.
Rep. No. 104-469, at 225-26 (1996)). Finally, the court
observed that while Congress had "retain[ed] the language of
*Fleuti*," namely "the operative terms intent, innocent, casual,
or brief," in other immigration law provisions, it had drafted
the new INA § 101(a)(13) to "delineat[e] six specific scenar-
ios under which a returning alien would be considered an
alien seeking admission." *Id.* at 392-93. These changes, the
court reasoned, were consistent with "a complete makeover of
§ 101(a)(13) . . . specifically intended to supplant the subjec-
tive intent inquiry that was a feature of the old law." *Id.* at
393. Given the ambiguity of the new INA § 101(a)(13), and
the BIA's undisputed authority to interpret the immigration
laws, the Third Circuit elected to follow the BIA's holding in

*Matter of Collado-Munoz. Id.* at 396-97; *see also Malagon de Fuentes*, 462 F.3d at 501-02.

**[5]** For the reasons given by the Third Circuit, we cannot conclude that the BIA's interpretation in *Matter of Collado-Munoz* is unreasonable. We therefore hold, in light of the deference owed the BIA, that IIRIRA § 301(a)(13) abrogated the *Fleuti* doctrine.

## C. Retroactivity

Camins argues that even if IIRIRA abrogated the *Fleuti* doctrine, the new INA § 101(a)(13) cannot be applied to his case. Doing so, he contends, would retroactively attach a new disability to his pre-IIRIRA guilty plea: the inability to make an innocent, casual, and brief trip abroad without being exposed to a charge of inadmissibility upon return. We review de novo, and without *Chevron* deference to the BIA, whether a change to an immigration law is impermissibly retroactive. *Sinotes-Cruz*, 468 F.3d at 1194, 1198; *see also Valencia-Alvarez v. Gonzales*, 469 F.3d 1319, 1326 (9th Cir. 2006).

The application of a statute is retroactive "if it alters the legal consequences of acts completed before its effective date." *Chang v. United States*, 327 F.3d 911, 920 (9th Cir. 2003). Such "[r]etroactive application of statutes is disfavored in the absence of clear contrary Congressional intent." *Id.* This is true because "[e]lementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994).

The Supreme Court in *Landgraf* articulated a two-step test for determining whether a federal statute applies retroactively. A court first must "determine whether Congress has expressly prescribed the statute's proper reach." *Id.* at 280. If Congress has clearly provided that a statute will apply retroactively, the

court's work ends. However, "absent clear congressional intent favoring" retroactive application, *id.*, the court must move to the second step of the *Landgraf* test, under which it determines whether "the new provision attaches new legal consequences to events completed before its enactment" such that it interferes with "familiar considerations of fair notice, reasonable reliance, and settled expectations." *Id.* at 270; *see also Chang*, 327 F.3d at 920 & n.8.

Courts frequently describe this analysis as an inquiry into whether the application of a statute is "impermissibly" retroactive. *See, e.g.*, *I.N.S. v. St. Cyr,* 533 U.S. 289, 316 (2001) ("[T]he first step in determining whether a statute has an impermissible retroactive effect is to ascertain whether Congress has directed with the requisite clarity that the law be applied retrospectively.")*; Saravia-Paguada v. Gonzales,* 488 F.3d 1122, 1130 (9th Cir. 2007) ("Absent an unmistakable congressional directive, we may determine that a statute is impermissibly retroactive if it 'takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past.' ") (quoting *Landgraf*, 511 U.S. at 269). To be precise, however, the *Landgraf* framework merely creates a presumption about the *meaning,* rather than the permissibility, of statutory text. *Cf. Landgraf*, 511 U.S. at 272 ("Because it accords with widely held intuitions about how statutes ordinarily operate, a presumption against retroactivity will generally coincide with legislative and public expectations."). Thus, the term "impermissibly" is a bit of a misnomer. There is no question of Congress' power to require, within constitutional limits, that a statute operate retroactively. What courts really mean when they say that a statute has an "impermissibly retroactive effect" under *Landgraf* is that there has been no clear expression of congressional intent that the statute should operate retroactively to disrupt a settled reliance interest.

Applying the *Landgraf* test, the Court held in *St. Cyr* that IIRIRA's repeal of former INA § 212(c), which allowed the

Attorney General to waive deportation, did not apply retroactively to aliens who pled guilty, prior to IIRIRA's effective date, to criminal offenses making them eligible for deportation. 533 U.S. at 294-95, 326. In *St. Cyr*, an LPR from Haiti pled guilty on March 8, 1996, to the sale of a controlled substance in violation of Connecticut law. *Id.* at 293. While the conviction made St. Cyr deportable, he remained eligible for waiver under § 212(c) at the time he pled guilty. By the time the INS commenced proceedings against St. Cyr, on April 10, 1997, however, IIRIRA had replaced § 212(c) waiver of deportation with cancellation of removal, for which resident aliens convicted of aggravated felonies, including certain drug offenses, are ineligible. *Id.* at 293, 297. St. Cyr argued that the repeal of § 212(c) did not apply retroactively to his case.

**[6]** Under the first step of the *Landgraf* test, the Court in *St. Cyr* rejected the government's arguments that IIRIRA "provide[d] a clear statement of congressional intent to apply IIRIRA's repeal of § 212(c) retroactively." *Id.* at 317. As evidence that the "demanding" "standard for finding such unambiguous direction" was not met, the Court noted that Congress had included language in IIRIRA expressly stating that other provisions would apply retroactively, but had failed to include similar language with respect to the section repealing § 212(c). *Id.* at 316, 318-19. Turning to the second step of the *Landgraf* test, the Court concluded that the repeal of § 212(c) did attach "new legal consequences" to LPRs' pre-IIRIRA plea agreements. *Id.* at 321. It reasoned that, although relief under § 212(c) had been discretionary, IIRIRA caused LPRs convicted of certain offenses to face "certain deportation," rather than merely "possible deportation." *Id.* at 325. The Court held that retroactive application of this change of law would interfere with plea-convicted LPRs' "reasonable reliance on the continued availability of discretionary relief from deportation." *Id.* at 324. According to the Court, "as a general matter, alien defendants considering whether to enter into a plea agreement are acutely aware of the immigration consequences of their convictions," and "in the years leading up to

. . . IIRIRA, preserving the possibility of such relief [from deportation] would have been one of the principal benefits sought by defendants deciding whether to accept a plea offer or instead to proceed to trial." *Id.* at 322-23. Therefore, the Court concluded that "§ 212(c) relief remains available for aliens, like [St. Cyr], whose convictions were obtained through plea agreements and who . . . would have been eligible for § 212(c) relief at the time of their plea under the law then in effect." *Id.* at 326.

[7] Since the Court's decision in *St. Cyr*, we have applied its holding to other provisions of the immigration laws that affect plea-convicted aliens. *See, e.g.*, *Sinotes-Cruz*, 468 F.3d at 1202-03 ("[P]art B of the stop-time rule of § 1229b(d)(1) does not apply retroactively to the seven-year continuous residence requirement of § 1229b(a)(2) for an alien who pled guilty before the enactment of IIRIRA and was eligible for discretionary relief at the time IIRIRA became effective."); *Kankamalage v. INS*, 335 F.3d 858, 860, 863 (9th Cir. 2003) (immigration regulation promulgated in 1990, which made aliens convicted of "a particularly serious crime" ineligible for asylum, did not apply retroactively to an alien who pled guilty to robbery in 1988). However, we have not reached the question presented here: whether the new INA § 101(a)(13) may be applied retroactively to LPRs who pled guilty prior to the enactment of IIRIRA.

We are aware of only one appellate case, *Olatunji v. Ashcroft*, 387 F.3d 383 (4th Cir. 2004), that has dealt directly with this question.[1] There, the Fourth Circuit held that the new INA § 101(a)(13) did not apply retroactively to an LPR from Nigeria who had pled guilty to the federal offense of "theft of government property" in 1994, prior to IIRIRA, and was

[1]As discussed above, the BIA and the Third and Fifth Circuits have addressed the issue of whether IIRIRA abrogated *Fleuti*, but they have not reached the additional question of whether this change may be retroactively applied to LPRs in Camins' circumstance.

detained and "classified as a lawful permanent resident seeking 'admission' " when he returned from a nine-day trip to London in 1998, after IIRIRA. *Id.* at 386, 396. Today, we join the Fourth Circuit in holding that the pre-IIRIRA law of entry, as it existed under the old INA § 101(a)(13) as interpreted by *Fleuti*, continues to be available to LPRs who pled guilty, prior to IIRIRA's effective date, to offenses that would otherwise cause them to be treated as seeking admission under the new INA § 101(a)(13).

[8] We begin with the first step of the *Landgraf* test, which requires us to determine whether "Congress has expressly prescribed the . . . proper reach" of IIRIRA § 301(a)(13), the new INA § 101(a)(13). *Landgraf*, 511 U.S. at 280. The Fourth Circuit held in *Olatunji*, and the government concedes here, that there is no evidence of "clear congressional intent" that IIRIRA § 301(a)(13) apply retroactively. *Olatunji*, 387 F.3d at 389, 393. We note that insofar as the BIA suggested in its order that the general effective date of Title III-A of IIRIRA, April 1, 1997, is sufficient evidence of Congress' intent that the sections in that title, including § 301(a)(13), apply retroactively, the Supreme Court rejected the identical argument in *St. Cyr. See St. Cyr*, 533 U.S. at 317 (holding that IIRIRA § 309(a), 110 Stat. 3009-625 (1996), does not establish Title III-A's retroactive reach).

Where congressional intent is unclear, we move to the second step of the *Landgraf* test, asking whether retroactive application would "attach[ ] new legal consequences to events completed before its enactment" such that it would interfere with "familiar considerations of fair notice, reasonable reliance, and settled expectations." *Landgraf*, 511 U.S. at 270. Camins argues that the new INA § 101(a)(13) does attach a new legal consequence to his guilty plea because, based on his conviction, it classifies him as seeking entry and exposes him to a charge of inadmissibility upon return from travel outside the United States, no matter how innocent, casual, and brief the travel. We agree.

**[9]** Camins' guilty plea made him inadmissible, and affected his ability to travel outside the United States, even under the old law. But whereas the old INA § 101(a)(13), as interpreted by *Fleuti*, allowed Camins to take innocent, casual, and brief trips outside the United States without subjecting him to a charge of inadmissibility, the new INA § 101(a)(13) would effectively prohibit him from making *any* overseas travel. Because the ability to make innocent, casual, and brief overseas trips is often critical to LPRs' ability to fulfill family and business obligations, this new legal consequence is significant. *See, e.g.*, *Jubilado*, 819 F.2d at 213; *Kamheangpatiyooth*, 597 F.2d at 1257-59; *Itzcovitz*, 447 F.2d at 893-94. By classifying as seeking admission LPRs who would not previously have been so classified, and thus exposing them to charges of inadmissibility they would not previously have faced, the new INA § 101(a)(13) clearly affects their substantive rights. *See Landgraf*, 511 U.S. at 278; *Republic of Austria v. Altmann*, 541 U.S. 677, 695 (2004) ("statutes that create jurisdiction where none otherwise exists speak not just to the power of a particular court but to the substantive rights of the parties as well" (internal quotation marks, alterations, and citations omitted)).

The government argues that Camins could have avoided any negative legal consequence imposed by the new INA § 101(a)(13) simply by choosing not to travel outside the United States. But this suggestion only emphasizes the strength of Camins' argument. Before the passage of the new INA § 101(a)(13), Camins' guilty plea did not deprive him of the right to visit family members or conduct business outside the United States, so long as the travel was innocent, casual, and brief. Now, if the new INA § 101(a)(13) may properly be applied to him, he is effectively confined to the United States, with no ability to visit his ailing mother or otherwise travel abroad. The argument that Camins "should have discontinued all foreign travel after IIRIRA's enactment merely confirms its retroactive effect on his guilty plea." *Olatunji*, 387 F.3d at 398.

The government also argues that the new INA § 101(a)(13) does not attach any new legal consequence to Camins' plea because "[e]ven if Camins had been allowed to return to the United States . . . the Government could still have commenced removal proceedings against him." The Supreme Court rejected a similar argument in *St. Cyr*. The government had argued that because the discretionary waiver under § 212(c) did not guarantee that LPRs like St. Cyr could stay in the country, its repeal had no legal consequence for purposes of retroactivity. The Court reasoned that "[t]here is a clear difference, for the purposes of retroactivity analysis, between facing possible deportation and facing certain deportation." *St. Cyr*, 533 U.S. at 325; *see also Garcia-Ramirez v. Gonzales*, 423 F.3d 935, 941, 945 (9th Cir. 2005) (Fisher, J., concurring); *Kankamalage*, 335 F.3d at 863. Similarly, there is a clear difference between a removal proceeding brought against an LPR legally inside the country and a removal proceeding against an LPR seeking admission. Whereas the single crime of moral turpitude charged in Camins' Notice to Appear constituted sufficient grounds for inadmissibility if Camins were classified as seeking admission, that crime may or may not support a charge of removal against him as an LPR legally in the country. *Compare* 8 U.S.C. § 1182(a)(2)(A)(i)(I) ("Inadmissible Aliens") (making a single crime of moral turpitude a ground for inadmissibility regardless of when it was committed), *with* 8 U.S.C. § 1227(a)(2)(A)(i)(I) ("Deportable Aliens") (making a single crime of moral turpitude a ground for removal only if it was committed within five years of lawful entry).

Even assuming, *arguendo*, that Camins is removable as a legally present LPR based on a charge that immigration officials have not brought, a charge of inadmissibility is more disadvantageous to Camins than such a charge of removal. As a general matter, it is the alien who bears the burden of proving admissibility, while it is the government that must prove removability by "clear and convincing evidence." *See Toro-Romero*, 382 F.3d at 936 n.9. Moreover, the Supreme Court

and this court have held, as a matter of constitutional law, that inadmissible aliens need not be afforded the same protections as removable aliens. *See Landon v. Plasencia*, 459 U.S. 21, 32-34 (1982); *Armendariz-Montoya v. Sonchik*, 291 F.3d 1116, 1123 (9th Cir. 2002) ("[E]xclusion proceedings provide fewer procedural protections than deportation proceedings[.]"). Indeed, in *Jubilado*, we recognized that whether an overseas trip by a plea-convicted LPR fell within the *Fleuti* doctrine mattered precisely because if his "return to the United States did not amount to an entry," he "had a right to have the effect of his conviction determined in a deportation proceeding with its greater procedural safeguards" rather than in an exclusion proceeding. 819 F.2d at 214; *see also id.* at 212.

In determining whether the attachment of new legal consequences to past actions conflicts with "familiar considerations of fair notice, reasonable reliance, and settled expectations," *Landgraf*, 511 U.S. at 270, we require that reliance on the prior law "would have been objectively reasonable under the party's circumstances." *Hernandez de Anderson v. Gonzales*, ___ F.3d ___, No. 05-74132, 2007 WL 2264698, at *10 (9th Cir. Aug. 9, 2007); *see also Kelava v. Gonzales*, 434 F.3d 1120, 1124-25 & n.7 (9th Cir. 2006) (as amended) (rejecting claim of non-retroactivity because no reliance interest was implicated by statutory change), *cert. denied*, 127 S. Ct. 43 (2006). "We have formulated this rule in the negative: Aliens making a *Landgraf* retroactivity argument cannot prevail if they cannot plausibly claim that they would have acted . . . differently if they had known about the elimination of [the] relief." *Hernandez de Anderson,* 2007 WL 2264698, at *10 (internal quotations omitted) (alteration in original).

**[10]** Although evidence of a guilty plea or other quid pro quo exchange that could reasonably have been made in reliance on an old law is not the exclusive means of proving reliance, *see id.; Chang*, 327 F.3d at 920 n.8, it is clearly sufficient. *See Garcia-Ramirez*, 423 F.3d at 944 (Fisher, J.,

concurring). As the Supreme Court stated in *St. Cyr*, "as a general matter, alien defendants considering whether to enter into a plea agreement are acutely aware of the immigration consequences of their convictions." 533 U.S. at 322. The Court reasoned that it would be fundamentally unfair, after alien defendants had weighed these consequences and accepted a guilty plea, to attach new consequences to the attendant conviction. *Id.* at 323-24. We agree with Camins, and with the Fourth Circuit, that limitation on the ability to travel outside the United States is one of the "immigration consequences" of which LPR defendants considering whether to enter into a plea agreement would be acutely aware, and that "aliens who accepted a plea agreement prior to IIRIRA could reasonably have relied on their continuing ability to take brief trips abroad." *Olatunji*, 387 F.3d at 397. The new INA § 101(a)(13) and its abrogation of the *Fleuti* doctrine, when applied to aliens convicted pursuant to a guilty plea prior to IIRIRA, therefore disrupts precisely the sort of settled reliance interests that, in the absence of a clear statement to the contrary, *Landgraf* presumes Congress intended to leave intact.

## Conclusion

[11] We hold that IIRIRA § 301(a)(13) abrogated the *Fleuti* doctrine developed under the old INA § 101(a)(13). Under the new INA § 101(a)(13), LPRs who have been convicted of, or who have admitted to, commission of certain crimes cannot travel outside the country — even for innocent, casual, and brief trips previously allowed — without facing charges of inadmissibility upon their return. Retroactive application of the new INA § 101(a)(13) thus attaches a new legal consequence to the convictions of LPRs who pled guilty to these crimes prior to its enactment. Because the ability to travel abroad is one of the important "immigration consequences" that LPRs would take into account, and because LPRs who pled guilty to such offenses prior to IIRIRA would have reasonably relied on the continuing ability to travel abroad under

the old INA § 101(a)(13), as interpreted by *Fleuti*, we hold that the new INA § 101(a)(13) may not be applied retroactively to them.

In light of our holding that Camins is entitled to rely on the old INA § 101(a)(13), as interpreted by *Fleuti*, we do not reach his argument that the new INA § 101(a)(13) violates equal protection by distinguishing between LPRs who briefly leave the United States and those who remain here. Nor need we consider Camins' argument that the IJ applied an incorrect legal standard for relief from removal.

We remand for further proceedings consistent with our opinion.

Petition for review GRANTED and REMANDED.