RAWLINSON, Circuit Judge,
dissenting:
I respectfully dissent from the majority opinion for the following four reasons, which I discuss in greater detail below:
1. The majority opinion relies on an argument and analysis that has never been advanced by the Petitioner.
2. The majority opinion gives absolutely no deference to the agency’s interpretation of its regulation.
3. The majority opinion relies on prefatory language in the regulation and ignores the substance of the regulation.
4. The majority opinion usurps the agency’s authority by granting the petition without giving the agency the opportunity to apply the majority’s novel interpretation of the regulation.
Our precedent has consistently reinforced the premise that we do not address issues that are not raised in a petitioner’s opening brief. See Fence Creek Cattle Co. v. USFS, 602 F.3d 1125, 1134 n. 6 (9th Cir.2010); see also ONDA v. Locke, 572 F.3d 610, 614 n. 3 (9th Cir.2009). In his brief to this court, the petitioner argued in two and one-half pages that he “did not leave the country intentionally or voluntarily.” Petitioner’s Opening Brief, pp. 11-13. He essentially sought to equate the circumstances of his departure to a forced departure. See id. Never once did the petitioner cite to the prefatory language of the regulation that has been seized upon by the majority to make an argument that the petitioner never made. See id. The majority’s stark departure from our precedent seriously calls into question the legitimacy of the majority’s holding.
The majority’s departure from our precedent is compounded by the fact that the opinion gives absolutely no deference to the agency’s interpretation of its regulation. The majority opinion dutifully acknowledges our obligation to defer to the agency’s interpretation of its regulation, including those interpretations articulated in litigation briefs. See Majority Opinion, p. 519. The majority opinion even con *539 cedes that deference is required “unless an alternative reading is compelled.” Id. at p. 519 (citation omitted) (emphasis added). Yet, the majority opinion says one thing and does another.
As the majority opinion details, the Immigration Judge (IJ) relied upon the language of 8 C.F.R. § 245.13(k)(1), which provides in pertinent part that “[ujnless the applicant files an advance parole request prior to departing from the United States, and the Service approves such request, his or her application for adjustment of status ... is deemed to be abandoned as of the moment of his or her departure.... ” The majority opinion also recognizes that the Board of Immigration Appeals adopted the IJ’s reliance on the regulation. See Majority Opinion, p. 539. This same analysis is reflected in the brief filed on behalf of the agency. See Brief for Respondent, pp. 24-30.
The IJ, BIA and Department of Justice all relied on the seismic shift reflected in Congress’s enactment of the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA). Prior to the enactment of IIRIRA, continued eligibility for adjustment of status often depended on whether the alien intentionally departed the United States. See 8 U.S.C. § 1101(a)(13) (repealed 1996) (excluding from the definition of “entry” a return to the United States if the prior departure “was not intended” or “voluntary”). This statutory provision spawned a litany of cases addressing whether a particular departure was “intended” or “voluntary.” See, e.g., Rosenberg v. Fleuti 374 U.S. 449, 452-53, 83 S.Ct. 1804, 10 L.Ed.2d 1000 (1963) (describing the judicial evolution of the definition of “entry”). However, following the enactment of IIRIRA and the repeal of § 1101(a)(13), intent of the departing alien became irrelevant. See, e.g., Camins v. Gonzales, 500 F.3d 872, 878-79 (9th Cir.2007) (recognizing that the changes in IIRIRA “were consistent with a complete makeover of § [1101](13) specifically intended to supplant the subjective intent inquiry that was a feature of the old law....”) (quoting Tineo v. Ashcroft, 350 F.3d 382, 392-93 (3d Cir.2003)).
In Camins, we also deferred to an en banc decision of the BIA that specifically interpreted IIRIRA as abrogating the intent inquiry that was central to the preIIRIRA determination of entry. See id. at 879-80 (deferring to the BIA’s interpretation of IIRIRA as explicated in Matter of Collado-Munoz, 21 I. & N. Dec. 1061, 1064-65 (BIA 1998) (en banc)).
The majority completely ignores the pri- or deference we have given to the BIA’s holding that the intent of the departing alien is not relevant post-IIRIRA. Instead, the majority opinion seizes upon prefatory language in IIRIRA that has never been interpreted by the BIA in conjunction with a petitioner’s admissibility. See Majority Opinion, pp. 531-32 (emphasizing the first sentence of § 245.13(k)(l) and focusing on whether the petitioner “desired” to depart the United States). The majority’s focus returns to the “intent” analysis that was eliminated by IIRIRA, although purporting to base its analysis on the “context” of the statutory scheme. See Majority Opinion, p. 531. However, the statutory context points in the other direction. See Camins, 500 F.3d at 878-79 (explaining that the purpose of IIRIRA was to eliminate any examination of the subjective intent of the departing alien).
The first sentence of § 245.13(k)(l) provides: “If an applicant for benefits under section 202 of Pub.L. 105-100 desires to travel outside, and return to, the United States while the application for adjustment of status is pending, he or she must file a request for advance parole authorization *540 ...” Grammatically, it is apparent that the “desires to travel” clause is merely an introduction to the substantive portion of the regulation — the requirement of obtaining advance parole prior to departing the country. Indeed, although the parole requirement is explained in greater detail in the balance of the subsection, no further mention is made of the “desires to travel” language, reinforcing its introductory function. In addition, we have cautioned against reliance on introductory language when engaging in statutory interpretation. See United States v. Ertsgaard, 222 F.3d 615, 617-18 (9th Cir.2000). Our sister circuits agree. See United States v. Studifin, 240 F.3d 415, 421 n. 5 (4th Cir.2001); see also Davric Maine Corp. v. USPS, 238 F.3d 58, 62 (1st Cir.2001) (eschewing reliance on introductory language when the balance of the provision “makes clear that this reading is not tenable.... ”). The majority opinion’s inappropriate reliance on introductory language to the exclusion of the substantive provisions, lack of deference to agency interpretation and conflict with IIRIRA’s deliberate removal of the intent requirements prevent my joinder.
Finally, even if the majority opinion’s holding were correct, it is nevertheless inappropriate to apply this novel interpretation of the regulation without first giving the BIA the opportunity to consider this case in view of - the new interpretation of the regulation. See Pannu v. Holder, 639 F.3d 1225, 1228 (9th Cir.2011) (remanding for the -BIA to apply intervening legal interpretations).
Because the majority departs from our precedent, misinterprets the governing regulation, gives no deference to the agency, and refuses to remand, I respectfully dissent.